UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DANIEL ESCOBEDO,
    Plaintiff,

vs.             08-2017

MARY MILLER, DOCTOR BASHI
AMEJI, and WEXFORD HEALTH
SERVICES,
    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants' summary judgment motions [52] and [53], the plaintiff's responses, [56] and [57], respectively and defendants' reply [58] and [59].

Plaintiff is an inmate who is incarcerated within the Illinois Department of Corrections. On March 4, 2008, while incarcerated at Danville Correctional Center, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff claims that the defendants, Mary Miller, Dr. Bashi Ameji and Wexford Health Services were deliberately indifferent to his serious medical needs by allegedly denying him medical treatment for a stroke. Specifically, the plaintiff claims that the deliberate indifference took place during the period April 6, 2007 through April 9, 2007. The plaintiff seeks monetary damages. Defendants contend that summary judgment is warranted as the Plaintiff failed to properly exhaust his administrative remedies. A motion for summary judgment was previously filed; however, due to a question of fact, the court granted an opportunity to conduct discovery on the issue of exhaustion. In accordance with *Pavey v. Conley*, WL2277494 (7th Cir. 2008), the question of fact with regard to the issue of exhaustion should be resolved pursuant to the Defendant's renewed motion for summary judgment. The testimony heard during the April 29, 2009 Pavey hearing reflects the facts contained in this order.

## UNDISPUTED MATERIAL FACTS

1. Plaintiff, Daniel Escobedo, is an inmate incarcerated within the Illinois Department of Corrections.
2. The incidents that gave rise to the instant action occurred while Plaintiff was incarcerated at Danville Correctional Center. Plaintiff began feeling symptoms of his "stroke[1]" on April 6, 2007 which continued through April 17, 2007, when he spoke with Dr. Ameji

---

[1] Defendants dispute that the plaintiff suffered a stroke, but whether or he actually suffered a stroke is not determinative factor as to the issue of exhaution.

and his requests for treatment were denied. (Affidavit of Daniel Escobedo, Exhibit A, ¶ 1 [56].

3. In his first amended complaint, the plaintiff alleges that he was denied medical treatment for a stroke during the period April 6, 2007 through April 9, 2007. (Docket #12, pp. 2-3 and 10-14).

4. In a grievance dated June 12, 2007, Plaintiff grieved a denial of medical treatment by Dr. Ameji on April 12, 2007. (Exhibit Q attached to Docket#12). The plaintiff claims that the date, April 12, 2007, listed on his grievance as the date of his "stroke" was simply a mistake. (Affidavit of Daniel Escobedo, Exhibit A ¶ 2, attached t docket 57.)

5. Plaintiff's grievance was denied by the institution. (Exhibit U attached to Docket #12). The grievance officer, after conferring with Mary Miller, determined that the proper policies and procedures were followed. (See grievance attached to amended complaint at docket #12.) The chief administrative officer concurred with the grievance officer's response. In the grievance, the grievance officer noted that the dates the plaintiff had been to the Health Care Unit were actually on April 6 and April 7, 2007, rather than April 12, 2007. (Id.)

6. The plaintiff appealed the grievance to the Administrative Review Board (hereinafter ARB). In his August 1, 2007 letter to the ARB, he specifically denied that he was ever provided proper medical attention. (Id.)

6. Plaintiff's appeal to the ARB was denied because ARB determined that the plaintiff's grievance was not filed within the time frame provided for in Departmental Rule 504. (Exhibit O attached to Docket #12).

7. Plaintiff admits that his grievance was not timely filed[2]. (Complaint, pp. 6-7, docket #12.)

8. The defendants claim the plaintiff did not file a grievance in accordance with Departmental Rule 504, regarding the alleged deliberate indifference to his serious medical needs, namely a stroke, by Defendant Mary Miller on April 6, 2007, or April 7, 2007, while at Danville Correctional Center. (Defendant's Exhibit A, Affidavit of Melody Ford, ¶7).

9. Although plaintiff affies that during the relevant period [of his complaint], he was unaware of how to file a grievance (Affidavit of Daniel Escobedo, Exhibit A ¶ 4 attached to Docket # 56 ), the defendants have provided proof that the plaintiff filed a grievance and processed the grievance through the entire grievance review process in 1989. (Exhibit A, Affidavit of Sarah Johnson attached to docket # 58.) Further, the plaintiff received the orientation manual which included a description of the grievance process upon his arrival at Danville Correctional Center. (See document 1 attached to Exhibit B, Affidavit of Becky Williams, which is attached to docket #58.) Further, the plaintiff successfully processed a grievance through the institutional level in January 2007. (Documents 2 and 3 attached to Exhibit B at docket # 58.)

---

[2]Plaintiff disputes that fact by saying that he has never admitted to not filing a timely appeal of his grievance. He claims that in his amended complaint [12], he merely responded to the question "what was the result?" (regarding the grievance) and explains *the prison's* reasons why the appeal was denied. He claims that his answer to the question "what was the result" was a statement of the prison's stated reason for denying plaintiff's grievance, not a statement of the plaintiff's own opinion as to why the claim was denied. The plaintiff claims that he believes his claim was timely, but the prison denied it as untimely. (Affidavit of Escobedo, Exh. A, ¶ 6 [56].)

2

10. Grievance documents were located in the foyer area of the prison, which had a lock door that could only be opened by a prison guard. (Exhibit A, ¶ 4 attached to docket number [56].)
11. Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. Generally, an inmate must first attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The Grievance Officer may personally interview the inmate and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the Grievance Officer's conclusions and if appropriate, recommended relief is forwarded to the CAO. The CAO, or CAO's designee's, decision is then submitted to the grieving inmate. (Affidavit of Melody J. Ford, Exhibit A attached to docket 53.)
12. If, after receiving the CAO's decision the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendations to the Director or Director's designee who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB's files. Department Rule 504F: Grievance Procedures for Committed Person provides no further means for review beyond this step. (Id.)
13. Certain issues may be grieved directly to the ARB, rather than first through a counselor or grievance officer. These issues include: a. Decisions involving the involuntary administration of psychotropic medication; b. Decisions regarding protective custody placement, including continued placement in or release from protective custody; c. Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and d. Other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned. These grievances are then handled in accordance with the procedures described in paragraph 3 above. (Id.)
14. An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedure described in paragraph 3 above. (Id.)
15. The grievance procedure may not be utilized for complaints regarding decisions which are

outside the Department's authority such as parole decisions, clemency or orders regarding the length of sentences or decisions which have been reviewed by the Director. (Id.)

16. Melody J. Ford has searched the ARB records regarding Offender Daniel Escobedo, Register No. N43563. ARB records indicate this office has not processed a grievance involving Bashi Ameji, M.D. nor Wexford Health Sources, Inc. regarding deliberate indifference to a serious medical need in April of 2007 at Danville Correctional Center. (Id.)

17. On August 3, 2007, the ARB office did receive an [appeal of] a grievance from Offender Escobedo regarding Dr. Ameji, and medical care on April 12, 2007, however, the Grievance Officer at Danville Correctional Center did not receive this grievance until July 12, 2007, which is past the 60-day time frame. ARB returned this grievance to Offender Escobedo informing him that the grievance was not submitted in the time frame outlined in Department Rule 504 and that the issue would not be addressed further. (Id.)

Disputed Facts

1. After April 17, 2007, the plaintiff lost the ability to effectively use the left side of his body and had major difficulty walking and performing simple daily tasks. (Exhibit A ¶ 3 [56] and Medical Records attached as exhibits to amended complaint at docket 12.)

Discussion and Conclusion

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge

may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Pursuant to the Prison Litigation Reform Act, all prison inmates bringing an action under 42 U.S.C. §1983, with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. (42 U.S.C. §1997e(a)). Section 1997e(a) specifically provides: No action shall be brought with respect to prison conditions under section 1983 by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. §1997e(a). Section 1997e(a)'s exhaustion requirement is mandatory and applies to all prisoners seeking redress for wrongs occurring in prison. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, (2002). A district court lacks discretion to resolve a claim on the merits unless a prisoner has exhausted all administrative remedies available to him. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999). Pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks, including monetary damages. *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825 (2001). The defendants correctly advise the court that to sufficiently exhaust all administrative remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). For an inmate in the Illinois Department of Corrections, this exhaustion includes initially seeking redress of complaint through his correctional counselor. 20 Ill. Admin. Code § 504.810. If informal resolution is impossible or the grievance concerns a disciplinary proceeding, the inmate must file a written grievance at the institutional level within 60 days of the discovery of the issue giving rise to the grievance. 20 Ill. Admin. Code 504.810. When filing a written grievance, the inmate must include the factual details of his complaint, including what happened, where, when, and the name of each person subject of or otherwise involved in the complaint. 20 Ill. Admin. Code 504.810. Moreover, an inmate must also appeal an unfavorable decision to the Director or his designees in the Administrative Review Board. 20 Ill. Admin. Code 504.850. The entire process must be completed before suit is filed, completion after suit is filed is insufficient. *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).

Here, the plaintiff is complaining about alleged denial of medical care during the period April 6, 2007 through April 9, 2007. He filed a grievance dated June 12, 2007 wherein he apparently wrote the wrong date, April 12, 2007, as the date of the denial. (In the grievance, the grievance officer noted that the dates the plaintiff had been to the Health Care Unit were actually on April 6 and April 7, 2007, rather than April 12, 2007.) The defendants argue that the grievance was untimely because it was received on July 12, 2007 past the 60-day time frame allowed. If that is the case, then ordinarily 42 U.S.C. § 1997e(a), part of the Prison Litigation Reform Act, forecloses this suit. Escobedo did file an administrative grievance, but defendants contend it was too late. Prisoners must follow state rules about the time and content of grievances. *See Pozo v. McCaughtry,* 286 F.3d 1022 (7th Cir.2002); *Strong v. David,* 297 F.3d 646 (7th Cir.2002). Failure to do this means failure to use (and thus to exhaust) available remedies. Yet the state's administrative apparatus, specifically the grievance officer and the chief administrative officer, did not reject Escobedo's grievance as untimely; it accepted and denied the grievance on the merits. At

the time of these events, Illinois permitted a filing after six months when the prisoner had good cause, see 20 Ill. Admin. Code § 504.810(a)(2003)(However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered.)[3] Here, the prison officials (grievance officer and chief administrative officer) handling the grievance must have found good cause; anyway, the Seventh Circuit Court of Appeals held in *Pozo* that, when a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action. 286 F.3d at 1025. *See also Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004). As to the ARB's rejection of the grievance stating it was untimely, the plaintiff was appealing the grievance officer and chief administrative officer's determination that the proper policies and procedures had been followed. In his August 1, 2007 cover letter to the ARB, the plaintiff specifically refuted that he had received proper medical attention. Further, the plaintiff filed his appeal to the ARB within the required time frame for appeals. Therefore, the ARB cannot reject the appeal of grievance officer and chief administrative officer's decision as untimely. Although this plaintiff does have some credibility issues (he obviously was not truthful when he stated, under oath, that he was not aware of the grievance process [in April, May and early June 2007] until another inmate told him about it), the court finds, based on the facts before this court, that the plaintiff has exhausted administrative remedies and he may proceed with his litigation.

It is therefore ordered:

1. Based on the foregoing, the defendants' summary judgment motions [52] and [53] are denied. The court finds the plaintiff has exhausted administrative remedies and he may proceed with his litigation.
2. The parties are reminded that this matter is set for further status conference on September 9, 2009 at 1:30 p.m., by video conference.

Enter this  25th   day of August 2009.


/s/ Michael P. McCuskey
_____
Michael P. McCuskey
Central District of Illinois

---

[3]The defendants apparently did not consider this language in the statute or either chose to ignore it.